(No. 38753.—

The People of the State of Illinois, Defendant in Error, *vs.* Ivan Cecil Hicks, Plaintiff in Error.

*Opinion filed Sept. 23, 1966.—Rehearing denied Oct. 27, 1966.*

SCHAEFER, J., and KLINGBIEL, C.J., dissenting.

JOHN R. SNIVELY, of Rockford, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and OTTO E. FUNK, State's Attorney, of Hillsboro, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Ivan Cecil Hicks was convicted of the offense of murder in a jury trial in the circuit court of Montgomery County and sentenced to life imprisonment. He now contends trial court errors denied him the due process of law guaranteed by both the United States and Illinois constitutions.

The evidence indicates that defendant and decedent, Doris McGlynn, along with others, on the night of February 20, 1959, were at the Log Cabin Inn in Taylor Springs, Illinois, when the sheriff of Montgomery County arrived for the purpose of enforcing the closing ordinance. The sheriff testified that he observed defendant order one bottle of beer, but the latter did not fully consume it. Defendant was well groomed, well dressed, and acting in a normal manner. He seemed to be "having a good time". The Log Cabin Inn was closed at 1:20 A.M. on February 21, 1959, where upon defendant and his party left and traveled to the Nite Owl Tavern. The sheriff arrived at the Nite Owl shortly after defendant and his party did so. While there, some conversation between defendant and the sheriff occurred regarding the sheriff's authority to close the taverns. Defendant conversed normally, his words were not slurred, and in general his demeanor was that of an alert person. Defendant consumed one bottle of beer at the Nite Owl. This tavern closed, whereupon defendant drove one of his party to her home. He and the remaining members of the

group then went to the decedent's mother's home which was located behind the Log Cabin Inn.

Defendant and decedent became involved in an argument, apparently relating to the closing of the taverns, while at the home of decedent's mother. Defendant grabbed decedent by the hair and started beating her head against the kitchen table. A struggle ensued during which defendant stabbed decedent in the right breast with a butcher knife. Decedent fell to the floor, mortally wounded. Defendant asked decedent's mother to call the police or an ambulance. He remained at the scene of the incident until the sheriff and a State trooper arrived.

Defendant was taken into custody and transported to the hospital in Hillsboro, Illinois, where a test to determine the alcoholic content of his blood was performed. Analysis later revealed that defendant's blood contained .19% alcohol. After the specimen of defendant's blood was taken at the hospital he was transported to the county jail where in the presence of the sheriff, State's Attorney and State trooper John Kahle, defendant confessed that he had stabbed decedent.

Defendant testified at the hearing on a motion to suppress the confession that he had been drinking quite heavily throughout the afternoon and evening of February 20, 1959. He had consumed a half-pint of whiskey early in the afternoon and had consumed several bottles of beer thereafter. He stated that he did not remember with particularity the terms of the confession and did not recall stabbing decedent. No claim of any coercion on the part of the authorities was made by defendant with regard to the confession.

The sheriff and State trooper Kahle testified at the hearing on the motion to suppress that defendant was advised by the State's Attorney that he need not make a statement and that he was entitled to the services of an attorney, but that defendant stated that he "wanted to get it over with."

This testimony is not disputed. Both of these officers testified that at the time the statement was made defendant appeared normal, although he was nervous and upset, that his speech was not impaired, and that he was able to walk in an ordinary manner. The trial court determined that defendant's statement was voluntarily given and allowed it to be admitted as evidence on behalf of the People.

· Defendant's initial contention is that the trial court erred in failing to conduct a sanity hearing prior to the trial. We do not agree. The record manifestly establishes that defendant personally agreed to the withdrawal of his motion for such hearing after it was disclosed that the only examining psychiatrist had determined defendant to be sane and not suffering from mental illness. Counsel for defendant advised the court that the only evidence on behalf of defendant that would be introduced at a hearing would be the psychiatrist's report. The court thereupon specifically and at length admonished defendant that he was nevertheless entitled to a sanity hearing before a jury. Defendant, however, personally acquiesced in the withdrawal of the motion. Under such circumstances, we believe it clear that the trial court did not abuse its discretion in not conducting, *sua sponte,* a sanity hearing, as no *bona fide* doubt as to defendant's competency to stand trial was made manifest. *People* v. *Baker,* 26 Ill.2d 484, 487-89.

It is next maintained that the trial court erred in denying defendant's motion for fees for expert witnesses. However, the present statutory authority for expert defense witness fees (Ill. Rev. Stat. 1965, chap. 38, par. 113—3) was not then in effect nor was there a showing of any necessity for such witnesses other than a statement in defendant's brief that "he needed expert witnesses to prepare his defense". No error was committed in denying defendant's motion for such fees.

Defendant further contends that the trial court's allowance of the State's motion to endorse additional witnesses

on the indictment was erroneous. We have previously held
that this question is left largely to the sound discretion of
the trial judge. (*People* v. *Hopkins,* 29 Ill.2d 260, 266;
*People* v. *Connors,* 413 Ill. 386, 390.) Defendant makes no
claim of prejudice or surprise with respect to such addi-
tional names, but argues that his counsel was not allowed a
reasonable time to prepare for trial by reason of the trial
court's failure to *sua sponte* continue the cause for trial at
a later date after the additional names were placed on the
indictment. However, defense counsel had been involved in
the cause for 47 days prior to the additional endorsements,
and the court specifically required the State to make such
additional witnesses available to defense counsel at least 12
hours prior to their testifying at the trial. This requirement
was apparently satisfactory to the defense, for no motion
for continuance was made and counsel for the defense an-
nounced that they were ready for trial. There was no error
in this action of the trial court.

Defendant next argues that his confession was erroneo-
ously allowed to be introduced into evidence, as all the
names and addresses of those persons present at the time
it was made were not furnished to defendant or his counsel
prior to arraignment. This objection was not raised in the
trial court and may not properly be posed for the first time
on review (*People* v. *Trefonas,* 9 Ill.2d 92, 98-99), but,
in any event, the record simply does not bear out the conten-
tion, for it is affirmatively shown therein that defendant
was furnished a copy of the confession along with a list of
witnesses present when the statement was made and their
addresses.

Defendant further questions the admission of the con-
fession on grounds of involuntariness. No claims of co-
ercion are made by defendant and the record establishes
that he was advised of his right to remain silent and his
right to counsel by the State's Attorney, the interrogator.
The only contention worthy of discussion on the question of

voluntariness of this confession is whether defendant was so intoxicated at the time the statement was taken as to preclude the statement from acquiring the status of a voluntary confession. Both the sheriff and State trooper who were present at the time the confession was made testified that defendant appeared normal, was able to walk in a proper manner, had no impairment of his speech, and in general exhibited normal behavior, although he was nervous and upset. The only evidence indicating intoxication of any degree is the result of defendant's blood test, indicating that just prior to the confession, his blood contained .19% alcohol. Under these circumstances, we cannot say that the trial court's determination of voluntariness is against the manifest weight of the evidence, and that judgment will not be disturbed here. *People* v. *Golson,* 32 Ill.2d 398; *People* v. *Hartgraves,* 31 Ill.2d 375.

Defendant further argues that since all the material witnesses to the confession were not called or their absence satisfactorily explained, the statement should not have been received as evidence. Specifically, it is argued that the State's Attorney, who was the principal interrogator and who received the confession, should have been placed on the witness stand at the hearing on the motion to suppress. We disagree, for the record shows that the State's Attorney advised both the court and counsel for the defense as to his availability for cross-examination concerning the taking of the confession. The defense, since it apparently believed that the State's Attorney would testify as to the complete regularity and propriety of the circumstances under which the confession was acquired, declined to cross-examine him.

It is next maintained that the court erred in refusing to instruct the jury as to the offense of manslaughter and to give that form of verdict to them. This argument is premised upon the disputed contention that defendant was so intoxicated, as disclosed by the blood test, as to negative the requisite element of intent (malice) essential for a con-

viction of murder. We have previously held that in order to require a manslaughter instruction on such grounds the evidence must indicate that the accused's intoxication was "so great as to entirely suspend his power of reasoning * * *. (*People* v. *Minzer*, 358 Ill. 345)". (*People* v. *Tanthorey*, 404 Ill. 520, 531-32.) The evidence of intoxication adduced at defendant's trial clearly falls far short of that required under the cases cited, and error was not committed in refusing the proffered manslaughter instruction.

Our disposition of the immediately preceding contention likewise adequately rebuts defendant's further argument that, by reason of his intoxication, he was incapable of committing the offense of murder and the evidence is therefore insufficient to sustain the conviction. Voluntary drunkenness is ordinarily no defense to the commission of an offense, but, where malice is an essential element of the offense (Ill. Rev. Stat. 1959, chap. 38, par. 358) and the intoxication is so extreme as to negate the existence of such intent, the accused may not be adjudged guilty of the offense. (*People* v. *Winters*, 29 Ill.2d 74, 80-81; *People* v. *Strader*, 23 Ill.2d 13, 21.) Here, as indicated previously, the evidence of intoxication (the results of the blood test) is amply overcome by the undisputed testimony concerning defendant's apparently ordinary behavior and demeanor immediately prior to and after the stabbing of decedent.

Further contentions of defendant concerning certain rebuttal testimony on behalf of the People were not raised below and may not be urged for the first time on appeal. *E.g. People* v. *Trefonas*, 9 Ill.2d 92, 98-99.

Defendant finally requests reduction by us of the sentence imposed by the trial court. It has been observed frequently that where the punishment imposed is within the limits prescribed by the legislature, this court should not disturb it unless it is clear that the sentence constitutes a great departure from the spirit and purpose of the law or it is manifestly violative of the constitutional mandate re-

quiring that all penalties must be proportioned to the nature of the offense. Here, a particularly heinous crime has been committed and we are unable to say that the principles just mentioned have been violated by the imposition of a life sentence. *People* v. *Taylor*, 33 Ill.2d 417, 424; *People* v. *Smith*, 14 Ill.2d 95, 97, and cases there cited.

The judgment of the circuit court of Montgomery County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

Mr. Chief Justice Klingbiel and I are of the opinion that the judgment should be reversed because the trial court erroneously refused to give the manslaughter instruction which was tendered on behalf of the defendant. The court disposes of this issue by saying that "the evidence of a high degree of intoxication (the results of the blood test) is amply overcome by the undisputed testimony concerning defendant's apparently ordinary behavior and demeanor immediately prior to and after the stabbing of decedent." This, however, is the very issue that should, in our opinion, have been submitted to the jury. The jury was not permitted to determine this issue, and we think it should not now be determined by this court.

The arresting officers, who testified at the trial to the defendant's "apparently ordinary behavior and demeanor", seem to have felt considerable doubt when they arrested the defendant, for they immediately took him to a hospital for a blood test to determine the degree of his intoxication. The test showed that the alcoholic content in defendant's blood was 19 hundredths of one per cent. At 15 hundredths of one per cent a person is presumed to be so intoxicated that he can not operate a motor vehicle safely. (Ill. Rev. Stat. 1957, chap. 95½, par. 144.) This evidence, coupled with the defendant's own testimony that he had been drinking heavily throughout the afternoon and evening, tended to negative malice and would have permitted the jury to find the defend-

ant guilty of manslaughter rather than murder. See, *e.g.,* *People* v. *Canada,* 26 Ill.2d 491; *People* v. *Brown,* 415 Ill. 23; *People* v. *Papas,* 381 Ill. 90.

Mr. CHIEF JUSTICE KLINGBIEL joins in this dissent.